Case 4:23-cv-03008   Document 32   Filed on 08/28/25 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
August 28, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| THE HOWARD HUGHES CORPORATION, *et al.*, § §  Plaintiffs, § § VS. § LIBERTY MUTUAL FIRE INSURANCE § CO., *et al.*, § §  Defendants. § | § § § § § CIVIL ACTION NO. 4:23-CV-03008 § § § § § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants Liberty Insurance Corporation and Liberty Mutual Fire Insurance Co.'s Motion for Summary Judgment (Dkt. 25) and Plaintiffs The Howard Hughes Corporation and The Woodlands Land Development Company, L.P.'s Motion for Partial Summary Judgment (Dkt. 27). After careful consideration of the briefing,[1] the record, and the applicable law, the Court **GRANTS** Defendants' motion (Dkt. 25) **IN PART** and **DENIES** Plaintiffs' motion (Dkt. 27).

### I.    FACTUAL BACKGROUND

This insurance-coverage dispute arises out of two insurance policies issued by Defendants Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation (collectively, "Liberty"). (Dkt. 25 at p. 6). Liberty issued both a Commercial General Liability Policy and a Commercial Liability Umbrella Policy (collectively, the "Policies")

---

[1] The Court **GRANTS** the Motion for Leave to File Defendants' Reply (Dkt. 26) and considers such in its analysis.

to Plaintiff The Howard Hughes Corporation ("Howard Hughes"). *Id*. Under these Policies, Plaintiff The Woodlands Land Development Company, L.P. ("the Woodlands") is a named insured. *Id*. The parties have filed cross motions seeking a determination on Liberty's duty to defend and indemnify Howard Hughes and the Woodlands (collectively, the "Insureds") in an ongoing lawsuit in state court. *See* (Dkts. 25, 27).

The state-court lawsuit (the "Underlying Lawsuit") was brought by hundreds of homeowners against the Insureds for property damage caused by flooding during Hurricane Harvey.[2] (Dkt. 27 at p. 9). The plaintiffs in the Underlying Lawsuit allege a storm in October of 1994 "produced flood levels that exceeded the levels of the 500-year flood plains in parts of Harris and Montgomery Counties." (Dkt. 27-1 at p. 23). After this storm, according to the plaintiffs, the Insureds began designing and developing a subdivision named Timarron in the "same area that experienced the catastrophic flooding of the October 1994 storm." *Id*. In relevant part, the pleadings continue:

---

[2] "When pleadings in the underlying lawsuit have been amended, the court analyzes the duty to defend by examining the 'latest, and only the latest, amended pleadings.'" *Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 329-30 (5th Cir. 2022) (quoting *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983)). Here, the Court looks to Plaintiffs' Seventh Amended Petition (Dkt. 27-1) for the motions currently before the Court.

> **D. Timarron Suffered Extensive Inundation from Rainwater During Hurricane Harvey and Some Inundation from Memorial Day 2016 Flood Event**
>
> 451. Plaintiffs own or owned residential properties in Timarron. During Hurricane Harvey, and to a lesser extent during Memorial Day 2016, Plaintiffs' homes and/or properties flooded.
>
> 452. The Developer Defendants made errors by instructing home builders to set their slabs for all or some of the homes in Timarron at an elevation that was unreasonably low for the elevation of the land it was built on and was below the standard they had set. They knew or should have known to have the houses built at an elevation adequate to prevent the likelihood of flooding, based on information about previous flooding in this area (*e.g.*, the October 1994 flooding).
>
> 453. As a result of Defendants' acts and/or omissions, Plaintiffs and their families have been displaced from their homes and have endured months and years of costly repairs and rebuilding. Plaintiffs allege permanent injury to their properties. In the alternative, Plaintiffs allege a temporary injury to their properties.

(*Id.* at p. 26) (referring to the Insureds as "Developer Defendants"). The plaintiffs in the Underlying Lawsuit bring claims for negligence, gross negligence, negligent undertaking, and violations of the Texas Deceptive Trade Practices Act against the Insureds. (*Id.* at pp. 29 – 32).

Presently, Liberty argues that it does not have the duty to defend or indemnify the Insureds in this Underlying Lawsuit because the claims fall within an exclusion. (Dkt. 25

at p. 12). The Policies have "Alienated Premises" exclusions that preclude coverage for "property damage" to:

> "[p]remises you sell, give away or abandon, if the 'property damage' arises out of any part of those premises, and results from one or more hazards that were known to you, or should have reasonably been known by you, at the time the property was sold, given away, or abandoned."

(Dkt. 27 at pp. 16 – 17).[3] The Insureds argue that this exclusion does not apply because "there are no 'premises' at issue and the alleged property damage did not arise out of the premises." (Dkt. 27 at p. 16). The Court addresses each argument below.

## II.    LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is "genuine" if the evidence, taken as a whole, could lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

---

[3] Liberty also argues that the Designated Work exclusion and Professional Liability exclusion preclude coverage. (Dkt. 25 at pp. 14 – 18). As the Court determines the coverage dispute under the "Alienated Premises" exclusion, it does not reach Liberty's argument on other provisions.

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). "[C]onclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). Further, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### III.   ANALYSIS

The Court finds that all of the Insureds' claims fall within a coverage exclusion, and therefore Liberty does not owe the Insureds the duty to defend their claims. Separately, the Court finds that it must defer its decision on Liberty's duty to indemnify the Insureds. Accordingly, the Court must grant Liberty's motion (Dkt. 25) in part and deny the Insureds' motion (Dkt. 27).

**A.     Duty to Defend**

In determining whether an insurer has a duty to defend an insured against a third-party complaint, Texas courts follow the "eight-corners" rule. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996). The eight-corners rule determines whether the insurer has a duty to defend by comparing the allegations in the third party's pleadings with the language of the insurance policy. *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

The insured bears the initial burden of showing that the claim against it is potentially within the insurance policy's scope of coverage. *Federal Insurance*, 837 F.3d at 552. Here, it is undisputed that the Insureds meet this burden. (Dkt. 27 at p. 15). However, Liberty argues that all of the Insureds claims fall into at least one exclusion. *See* (Dkt. 25). "If the insured carries its burden, it shifts to the insurer to show 'that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight corners rule.'" *Penn-America Ins. Co. v. Tarango Trucking, LLC*, 30 F.4th 440, 444 (5th Cir. 2022) (quoting *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004)).

Again, the "Alienated Premises" exclusion precludes coverage where property damage "results from one or more hazards that were known to you, or should have reasonably been known by you, at the time the property was sold, given away, or abandoned." (Dkt. 27 at pp. 16 – 17). Liberty argues that "[t]he entire premise of the [Underlying Lawsuit] is that the Woodlands knew or should have known of prior flooding

events and risks," and the Underlying Lawsuit therefore falls within the "Alienated Premises" exclusion. (Dkt. 25 at p. 12).

Conversely, the Insureds argue that the "Alienated Premises" exclusion does not apply for two reasons. First, the Insureds argue that the word "premises" in the Policies does not include undeveloped land. (Dkt. 27 at pp. 17 – 19). In other words, the Insureds argue that the land at issue in the Underlying Lawsuit does not qualify as "premises" under the Policies because it did not have buildings upon it when it was alienated. *Id*. The Court disagrees.

The Policies do not define "premises." (Dkt. 27 at p. 17). Thus, the Court must give the term its ordinary and commonly understood meaning. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009) ("[W]e give policy language its plain, ordinary meaning unless something else in the policy shows the parties intended a different, technical meaning."). While the Insureds argue that "premises" cannot mean land alone, the San Antonio Court of Appeals has stated that, "[u]nder the dictionary definitions of the word 'premises' a tract of land may be intended, as when used in a conveyance." *Associated Indem. Corp. v. Nat'l Sur. Corp.*, 287 S.W.2d 714, 716 (Tex. Civ. App.—San Antonio 1956, no writ.). Further, this Court, with Judge Rosenthal presiding, has already determined that undeveloped lots sold by the Woodlands for residential purposes qualify as "premises" under the same provision of an earlier, separate Liberty policy insuring the Woodlands. (Dkt. 25 at pp. 21 – 26); *see Allied World Assurance Co. v. ACE Am. Ins. Co.*,

*et al.*, Case No. 4:15-cv-03205 (S.D. Tex. Feb. 15, 2017). The Court finds that the use of the term "premises" in the "Alienated Premises" exclusion includes the lots at issue.

Next, the Insureds argue that the "Alienated Premises" exclusion doesn't apply because "[t]here is no allegation that there is anything wrong with the lots themselves." (Dkt. 27 at p. 20). However, as stated earlier, the plaintiffs in the Underlying Lawsuit allege that the Insureds possessed actual knowledge of the general risk of flooding in the area before having "portions of this residential development designed and built in the 500-year floodplain anyway." (Dkt. 27-1 at p. 24). The Court finds that this allegation places the claims against the Insureds firmly within the "Alienated Premises" exclusion.

The Court finds that all of the claims against the Insureds in the Underlying Lawsuit are within the scope of the "Alienated Premises" exclusion. Accordingly, the Insureds are not afforded coverage under the Policies for the duty to defend these claims, and Liberty's motion must be granted as to this duty.

**B.      Duty to Indemnify**

The Court defers its decision on the duty to indemnify. The duty to indemnify "arises after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages in a lawsuit." *Collier v. Allstate County Mutual Insurance Co.*, 64 S.W.3d 54, 62 (Tex. App.—Fort Worth 2001, no pet.); *see also Reser v. State Farm Fire & Casualty Co.*, 981 S.W.2d 260, 263 (Tex. App.—San Antonio 1998, no pet.). Unlike the duty to defend, which is based on allegations, an insurer's duty to indemnify is based on "the actual facts that underlie the cause of action and result in liability." *Northfield*

*Insurance Co. v. Loving Home Care*, Inc., 363 F.3d 523, 528–29 (5th Cir. 2004) (quotation marks omitted). "[I]t may be necessary to defer resolution of indemnity issues until after the underlying third-party litigation is resolved because coverage may turn on facts actually proven in the underlying lawsuit." *D.R. Horton-Texas, Ltd. v. Markel International Insurance Co., Ltd.*, 300 S.W.3d 740, 745 (Tex. 2009).

The Court finds that coverage may turn on the facts actually proven in the Underlying Lawsuit—including, but not limited to, whether the Insureds knew or should have reasonably known of the flooding hazard. Accordingly, the Insureds' motion as to the duty to indemnify must be denied at this point.

## IV.    CONCLUSION

The Court finds that Liberty does not owe the Insureds the duty to defend and the resolution of indemnity issues in this matter must be deferred. Accordingly, Liberty's motion (Dkt. 25) is **GRANTED** as to the duty to defend and **DENIED** as to the duty to indemnify.

The Insureds' motion (Dkt. 27) is **DENIED**.

This case is **STAYED** and **ADMINISTRATIVELY CLOSED** until final judgment is entered in the state-court lawsuit. At that time, the parties may reurge their motions on the duty to indemnify.

SIGNED at Houston, Texas on August 28, 2025.

*[signature]*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE